## William Hill et al. v. C. W. Howth, County Attorney.

### No. 1853. Decided June 24, 1908.

**1.—Election—Local Option—Change of Precinct Boundaries.**

The validity of an election adopting prohibition of the sale of intoxicating liquors within the limits of a justice's precinct was not affected by an order of the Commissioner's Court, made after the election had been duly ordered before it was held, taking the territory embraced in a driving park out of such justice's precinct and attaching it to another. (Pp. 624, 625.)

**2.—Same.**

The adoption of the local option prohibitory liquor law in a justice's precinct put the law in force throughout the limits of such precinct as established when the election therefor was ordered, though a part of the territory embraced had been taken out of such precinct and attached to another by order of the Commissioner's Court between the time of ordering and that of holding the election. The right of the voters to have submission of the issue as to then existing boundaries was conferred by the Constitution. (Pp. 624, 625.)

Questions certified by the Court of Civil Appeals for the First District in an appeal from Jefferson County.

*Geo. G. Clough* and *V. A. Collins,* for appellant.—These statutes are criminal laws; they are enforced through the criminal courts, and the punishments meted out for their violation are essentially penal. Hence, they are to be construed by the rules laid down for the construction of penal statutes. Commissioners' Ct. v. Beall, 98 Texas, 104; Ex parte Keith, 83 S. W. Rep., 683. And in the construction of such statutes, the decisions of the Court of Criminal Appeals of this State are binding authority upon this court. Commissioners' Ct. v. Beall, 98 Texas, 104.

The local option statutes, and the provisions of the law for the ordering of elections, the posting of the notices with the time of posting, the time of holding the election, and all of the requirements of the law with relation thereto, have always been strictly construed; and the elections have always been held void, where the strict letter of the law was not observed. Oxley v. Allen, 107 S. W. Rep., 945; Ex parte Conley, 75 S. W. Rep., 301; Ex parte Kennedy, 23 Texas Crim. App., 77; Ex parte Kramer, 19 Texas Crim. App., 124; State v. Merchant, 85 S. W. Rep., 483; Donaldson v. State, 15 Texas Crim. App., 25-29; Furrh v. State, 6 Texas Civ. App., 221; Yates v. State, 59 S. W. Rep., 275; Boone v. State, 10 Texas Crim. App., 418; Prather v. State, 12 Texas Crim. App., 401; Akin v. State, 14 Texas Crim. App., 142; Stallworth v. State, 18 Texas Crim. App., 378; Smith v. State, 19 Texas Crim. App., 444; Ex parte Sublett,

23 Texas Crim. App., 309; Ex parte Burge, 32 Texas Crim. App., 459; Ex parte Scwartz, 2 Texas Crim. App., 74; Ex parte McGill, 6 Texas Crim. App., 498; Ex parte Kilgore, 3 Texas Crim. App., 247.

A County Commissioners' Court may change the boundaries of a justice precinct at will; but if local option be in effect in the territory to be changed, it remains in force and effect. Ex parte Pollard, 103 S. W. Rep., 878; Ex parte Fields, 86 S. W. Rep., 1022; Woods v. State, 75 S. W. Rep., 37; Medford v. State, 45 Texas Crim. Rep., 180. And where such a change is thought desirable and necessary pending a local option election in territory where none has theretofore been held, it necessarily follows that a new order of election should be made, new notices posted and a new election held, without regard for the orders previously made. In no other manner can an election be legally held; the law requires that it must be held in a known political subdivision. Constitution, art. 16, sec. 20; Art. 3384 to 3395, 3327 to 3338, Rev. Stats.

The minutes must show the metes and bounds of the territory, after which reference can be made to precinct numbers. Ex parte Speagle, 34 Texas Crim. Rep., 465; Ex parte Smith, 34 Texas Crim. Rep., 284. The election must not be less than 15 nor more than 30 days from the date of the order. Curry v. State, 28 Texas Crim. App., 475; King v. State, 33 Texas Crim. Rep., 547. And notices must be posted for 12 days prior to the date of the election. Smith v. State, 19 Texas Crim. App., 444; Swenson v. McLaren, 2 Texas Civ. App., 331; Frickie v. State, 39 Texas Crim. Rep., 254; Bowman v. State, 38 Texas Crim. Rep., 14, 23; James v. State, 21 Texas Crim. App., 353.

If the provisions are mandatory, as the Court of Criminal Appeals has always said they are, then they could not be complied with where the territory to be affected by the election was only created two days prior to the day on which the election was held.

*Chas. D. Smith* and *Blain & Howth,* for appellee.—A change in the boundary lines of a justice precinct, either between the dates that the local option election is ordered and held, or subsequent to the election, does not affect the election. Nelson v. State, 8 Texas Ct. Rep., 139; Woods v. State, 8 Texas Ct. Rep., 107; Medford v. State, 45 Texas Crim. Rep., 180; Ex parte Fields, 13 Texas Ct. Rep., 99; McCrary on Elections, secs. 44, 47, 277; Paine's Law of Elec., sec. 339.

The mere fact that there was some irregularity in the notice of the election, or the manner of posting, or some variance between the order calling for the election and the notice thereof, which did not mislead any voter, does not affect the result of the election; and especially is this true where notice was actually given and the people voted, and it is not alleged that any portion of them failed in the knowledge of the pendency of the question or the exercise of the right to vote. Bowman v. State, 38 Texas Crim. Rep., 20; Ex parte Kennedy, 23 Texas Crim. App., 79; Roper v. Scurlock, 29 Texas Civ. App., 464; Norman v. Thompson, 30 Texas Civ. App., 537; Nelson v. State, 8 Texas Ct. Rep., 139; Fitze v. State, 12 Texas Ct. Rep., 796; McKinney v. O'Connor, 26 Texas, 11; Bell v. Faulkner,

84 Texas, 187; Fowler v. State, 68 Texas, 35; Ex parte White, 33 Texas Crim. Rep., 604; 15 Cyc., 316, 317; 15 Cyc., 321; Scarborough v. Eubank, 93 Texas, 108; Hanna v. State, 48 Texas Crim. Rep., 269; Ex parte Williams, 35 Texas Crim. Rep., 75; Chapman v. State, 37 Texas Crim. Rep., 167; McCrary on Election, secs. 178, 277; Paine's Law of Elections, sec. 384, par. 2.

It is not necessary to set out a justice precinct by metes and bounds in the petition, nor in the order calling for or declaring the result of the election in the justice precinct nor in the notices calling for the election. Ex parte Perkins, 34 Texas Crim. Rep., 429; Nichols v. State, 37 Texas Crim. Rep., 547.

Mr. JUSTICE WILLIAMS delivered the opinion of the court.

Certified questions from the Court of Civil Appeals for the First District, as follows:

"This is an appeal from the judgment of the District Court of Jefferson County in a contest of a local option election. Judgment was for contestee, from which contestant appeals. At a former day of the term the judgment of the District Court was reversed and judgment rendered by this court for contestant, declaring the election void. The case is now pending before this court on motion for rehearing. The questions involved are of first impression in this State, and elsewhere, so far as we have been able to find, and on account of their public importance and likewise of the importance that they may be finally settled throughout the State, which can only be done by the Supreme Court, and inasmuch as there is no right of appeal from the judgment of this court, we deem it wise to submit them to your Honorable Court.

"The facts are as follows: On November 15, 1907, upon the petition of the requisite number of qualified persons, the Commissioners' Court of Jefferson County ordered a local option election for Pecinct No. 6 in said county, said election to be held on December 14, 1907. Regular notice was given of said election in all respects in conformity with law. Said precinct, as then constituted, included about thirty acres of land known as the Driving Park, near the outskirts of the city of Beaumont. On December 12 the Commissioners' Court, by an order regularly made, changed the boundaries of Precinct No. 6 so as to detach therefrom the territory known as the Driving Park, which was attached to the adjoining precinct. No change was made in the election order or notices, in both of which the territory to be affected was simply described as Precinct No. 6, Jefferson County. The election was duly and regularly held on the day appointed with the result that prohibition was carried by a large majority. Returns of said election were duly and regularly made to the Commissioners' Court, and at the proper time the votes were counted and the result declared, showing that prohibition had carried in Precinct No. 6, Jefferson County. Thereupon this contest was instituted.

"Precinct No. 6 was created by the Commissioners' Court by order made on November 11, 1907. The order made December 12, changing the boundaries of Precinct No. 6 is as follows:

" 'Be it remembered that on this the 12th day of December, 1907, there came on to be heard and considered by the Commissioners' Court the petition of numerous citizens and taxpayers of Jefferson County, Texas, calling the court's attention to the fact that in laying out and establishing Justice Precinct No 6 of Jefferson County, at the regular November Term, 1907, of this court, that there had been included within the boundaries of said Justice Precinct No. 6, a tract of land, containing 30 17-100 acres out of the J. W. Bullock league, the same being the property of the Beaumont Driving Park Association of Beaumont, and that said property was used only for annual race meetings, fine horse and cattle shows, baseball and football games, and other amusements of like character for the benefit and amusement of the citizens of Jefferson County, and that there had been called by the court within said Justice Precinct No. 6, an election to be held on the 14th day of December, 1907, to determine whether or not the sale of intoxicating liquors should be prohibited in said precinct and that said petitioners deemed it both expedient and necessary that the sale of spirituous and malt liquors be permitted within the enclosure of said Driving Park during the occasions of said race meetings and other amusements, and that they feared that a prohibition of the sale thereof during said periods would jeopardize the future holding of said race meeting, and other amusements, and be instrumental in closing said Park, and praying the court that before said election be held to so amend and change the boundaries of said Justice Precinct No. 6 so as to exclude the said property belonging to said Driving Park Association, and to annex the same to Justice Precinct No. 1, from which it had been taken.

"And the court having duly considered said petition, and it appearing to the satisfaction of the court that said Driving Park is wholly used for the purposes stated in said petition, and that there is no person living in or upon said property, and that the same has been established and improved and is being maintained by the owners at large expense, and that the citizens generally of Jefferson County are greatly interested in the future maintenance of said driving park, and it further appearing to the satisfaction of the court that the prohibition of the sale of spirituous and malt liquors within the enclosure of said driving park might jeopardize the future operation of said Driving Park for the purposes hereinbefore named, and the court believing that it was not the purpose or desire of the citizens requesting said election to in any manner interfere with the purposes and affairs of said Driving Park Association or to destroy or impair its usefulness, the court is therefore of the opinion that the prayer of said petitioners should be granted, and that the boundaries of said Justice Precinct No. 6 should be so changed before said election is held and the result of said election is declared, so as to exclude from the territory thereof the said property of said Driving Park Association.

"It is therefore ordered by the court that said order heretofore passed and adopted by this court at its regular November Term thereof laying out and establishing said Justice Precinct No. 6, and

which is of record in Minute Book No. 5, on pages 16 and 17 of the minutes of this court, be and the same is hereby so amended as to embrace and include the following boundaries in lieu of the boundaries set out in said order.'

"Following are the boundaries of the precinct, which remained unchanged except the elimination of the Driving Park.

"In declaring the result of the election the Commissioners' Court designated the territory simply as Precinct No. 6, Jefferson County, Texas.

"The place where the election was held was in the territory of Precinct No. 6 as it existed at the date of the, election. No voters lived in the territory known as the Driving Park. In all respects, except as it may be affected by the matters involved in the questions hereinafter propounded, the election was ordered and held and the returns made, votes counted and result declared, in strict conformity with the provisions of the statute. Under these facts we respectfully certify to your Honorable Court the following questions:

"1. Was the election invalidated by the change in the boundaries of the precinct after the order of election was made and the notices posted and before the election was held?

"2. If this was a valid election, does it embrace in its result the entire precinct as it existed at the date of the order of election, including the Driving Park, or is it to be limited to the territory embraced in the precinct after the change in its boundaries by the order of December 12?"

---

The order of the commissioners changing the boundaries of the justice precinct, whether valid for other purposes or not, was without legal effect upon the district or territory already designated as that in which a local option was to be held and hence did not invalidate the election nor change the limits of the territory in which the law was put in force.

Section 20 of Article XVI of the Constitution is as follows:

"The Legislature shall at its first session enact a law whereby the qualified voters of any county, justice's precinct, town, city (or such subdivision of a county as may be designated by the Commissioners' Court of said county) may by a majority vote determine from time to time whether the sale of intoxicating liquors shall be prohibited within the prescribed limits."

The purpose of this was to give to the voters of the designated subdivisions of the counties the right to determine whether or not intoxicating liquors shall be sold therein, and the legislation that has been adopted has provided the procedure necessary to make the right effectual. It is wholly unnecessary in this case to enter into any discussion of the question as to how far the Commissioners' Court, in ordering an election, may exercise power or discretion in designating the subdivision, for the order designating the justices' precinct was entered and everything essential to the holding of the election therein was done. From that time, at least, it was the right of the voters to determine whether or not liquor should be sold in the subdivision so designated. To hold otherwise would amount to

saying that the right or power was in the Commissioners' Court and not in the voters, where the Constitution has placed it. Although the Commissioners' Court has power to alter justices' precincts for other purposes, it has often been held that the taking off of territory from a precinct, after the local option law has been put in force within it, does not affect the operation of the law over the detached territory. Ex parte Fields, 13 Texas Ct. Rep., 99; Medford v. The State, 45 Texas Crim. Rep., 180; Woods v. The State, 8 Texas Ct. Rep., 107; Nelson v. The State, 8 Te_as Ct. Rep., 139; Higgins v. The State, 64 Md., 419; Jones v. The State, 67 Md., 256; Prestwood v. The State, 88 Ala., 235.

The reason for this is that the power of the Commissioners' Court to subdivide the counties into justices' precincts does not include any power over the operation of the local option law, which power is left with the voters. The same reason applies here, for this right of the voters arises, at least, as soon as the territory is designated and the election ordered.

It follows that all of the election proceedings, in which justice precinct number six was referred to, legally apply to the territory embraced in that precinct when the election was ordered and that they put the law in force in the whole of that territory.

It has been urged that it can not be known how far the voters may have been influenced by their construction of the last order of the Commissioners' Court and their supposition that the driving park was or was not to be affected by the prohibitory law. This involves considerations that are not presented by the certificate which is as to the mere legal effect of the action of the court. It can not be assumed, in the consideration of the questions before us, that the voters did not know the law.

The answer to the first question is, no; and to the second, that the driving park is embraced in the result of the election.